UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DAVID THILL,  Case No. 08-CV-4612 (PJS/JSM)

        Plaintiff,

v.  MEMORANDUM OPINION
AND ORDER

OLMSTED COUNTY and
the STATE OF MINNESOTA,

        Defendants.

---

David Thill, pro se.

Gregory J. Griffiths, DUNLAP & SEEGER, P.A., for defendant Olmsted County.

John S. Garry, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendant the State of Minnesota.

This matter is before the Court on pro se plaintiff David Thill's objection [Docket No. 64] to Magistrate Judge Janie S. Mayeron's July 20, 2010 Report and Recommendation ("R&R") [Docket No. 63]. In her R&R, Judge Mayeron recommends that the Court grant the summary-judgment motions of defendants the State of Minnesota and Olmsted County [Docket Nos. 28 & 38].

The Court agrees with Judge Mayeron's recommended dispositions and therefore adopts in part her R&R and overrules Thill's objection. But because the Court does not entirely agree with the reasoning of the R&R, the Court writes separately to explain its reasons for granting summary judgment.

## I. BACKGROUND[1]

Thill visited the Olmsted County Government Center on October 19, 2007 in connection with a case that he was bringing in small-claims court. Am. Compl. ¶¶ 18, 20 [Docket No. 15]. At the time, Thill was recovering from shoulder surgery that had taken place a few weeks earlier. *Id.* ¶ 19. As Thill was departing the Government Center on October 19, the door through which he was leaving closed forcefully on him, pushing his body into the frame of the doorway. *Id.* ¶ 20. Thill subsequently had additional surgery on his previously injured shoulder. *Id.* ¶ 19. Based primarily on this October 19 accident, Thill brings various claims under Title II of the Americans with Disabilities Act ("ADA"), as well as a "personal injury" claim. Am. Compl. at 4-5.

## II. DISCUSSION

### *A. Standard of Review*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

---

[1] The facts in this section, which are taken from Thill's amended complaint, are undisputed.

Because Thill is a pro se plaintiff, his complaint must be liberally construed. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996). But pro se litigants "are not excused from compliance with substantive and procedural law . . . ." *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986).

### B. ADA Claims

#### 1. Accessibility Under the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" under Title II is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). Defendants do not dispute that they are "public entities" subject to Title II of the ADA.

Embedded in Title II's definition of a "qualified individual with a disability" is the principle that a covered public entity might be required to make reasonable accommodations to meet the needs of persons with disabilities.[2] In particular, as relevant to this case, Title II may require "the removal of architectural . . . or transportation barriers . . . ." *Id.*

---

[2]Following an extensive examination of Title II of the ADA and its implementing regulations, this Court concluded that Title II imposes on public entities a duty to reasonably accommodate individuals with disabilities in *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1137-41 (D. Minn. 2008).

Regulations that implement Title II make explicit the physical-accessibility requirement that is implicit within § 12131(2)'s definition of a "qualified individual with a disability." Specifically, any public facilities built after late January 1992 must be "designed and constructed in such manner that the facility . . . is readily accessible to and usable by individuals with disabilities . . . ." 28 C.F.R. § 35.151(a). Similarly, alterations to existing, non-historic public facilities begun after late January 1992 must, "to the maximum extent feasible," be made "in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities . . . ." 28 C.F.R. § 35.151(b); *see also* U.S. Dep't of Justice, The Americans with Disabilities Act: Title II Technical Assistance Manual ("TA Manual") § II-3.10000 (1993) ("Public entities must maintain in working order equipment and features of facilities that are required to provide ready access to individuals with disabilities. Isolated or temporary interruptions in access due to maintenance and repair of accessible features are not prohibited."), *available at* http://www.ada.gov/taman2.html.

In their summary-judgment briefs, defendants do not mention Title II's physical-accessibility requirements. Instead, defendants argue that because Thill entered the Government Center and had access to the Olmsted County courts, Thill's claim under § 12132 fails as a matter of law. Def. Olmsted County Mem. Supp. Mot. S.J. ("Olmsted County SJ Mem.") at 11 [Docket No. 40]; Mem. Supp. Def. Minn. Mot. S.J. ("Minn. SJ Mem.") at 4-6 [Docket No. 45]. Judge Mayeron agreed with defendants. R&R at 9-10. The Court respectfully disagrees with Judge Mayeron and the defendants.

It is true that under § 12132, a person with a disability may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

entity. . . ." 42 U.S.C. § 12132; *see also Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). But by defendants' logic, even if a public building had no handicapped-accessible entrances and therefore plainly violated the ADA's implementing regulations, a disabled person who somehow managed to enter the building — and thus gained access to the public services or programs in it — would be unable to succeed on an ADA claim against the public entity that owned the building. As Thill points out in his objection, Obj. at 2, accepting defendants' argument would mean that the plaintiff in *Tennessee v. Lane* — a paraplegic who had to "crawl[] up two flights of stairs" to attend a hearing in a courthouse that lacked an elevator — would not have a claim under the ADA. 541 U.S. 509, 514 (2004).

Title II of the ADA does not leave a person with disabilities who manages to crawl up a courthouse's steps with no remedy for the courthouse's inaccessibility. Indeed, as the Court noted in *Lane*: "Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." *Id.* at 531 (citing 42 U.S.C. § 12131(2)).

The Court therefore holds that Thill's admission that he managed to gain access to the Olmsted County Government Center does not, by itself, doom his ADA claim. Section 12132 does not just forbid public entities to entirely deny persons with disabilities access to public programs and buildings; it forbids "discrimination" against persons with disabilities. Title III of the ADA, which applies to private places of public accommodation, expressly defines "discrimination" to include, among other things, "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Although Title

II does not include a comparable definition of "discrimination," the Court holds that given both the physical-accessibility requirement implicit in Title II's definition of "qualified individual with a disability" and the ADA regulations with respect to physical accessibility, the term "discrimination" under Title II includes a public entity's failure to ensure that its facilities are accessible to the disabled.

The issue then, is whether a reasonable jury could conclude that Thill is a person with a disability against whom defendants discriminated by maintaining physically inaccessible facilities. The Court turns first to the question of Thill's disability and then addresses Thill's arguments with respect to how the Government Center was insufficiently accessible.

## 2. Thill's Disability

In his amended complaint, Thill asserts that at the time of the events underlying his suit, he was disabled for purposes of the ADA and was receiving Social Security disability benefits. Am. Compl. ¶ 14. Defendant Olmsted County does not disagree; indeed, it asserts in its summary-judgment brief that "[i]t is undisputed that [Thill] is a qualified individual with a disability . . . ." Olmsted County SJ Mem. at 12. Defendant the State of Minnesota asserts, solely with respect to Thill's claim that defendants violated the ADA by failing to provide a unisex bathroom, that this claim is based on a temporary shoulder injury that does not qualify as a disability under the ADA. Minn. SJ Mem. at 6.

In response to defendants' summary-judgment motions, Thill submitted various medical records from 2007 through 2009. Thill Aff. Exs. 1-2 [Docket No. 50]. Judge Mayeron interpreted those records as relating solely to Thill's shoulder injury, and she agreed with the

State of Minnesota that Thill's alleged disability was a temporary shoulder injury rather than a permanent condition and that Thill was therefore not disabled under the ADA. R&R at 8-9.

In his objection to the R&R, Thill reiterates that because he receives Social Security disability benefits, he must be disabled under the ADA. Thill further points out that his medical records show that he has Ehlers-Danlos syndrome and rheumatoid arthritis. Obj. at 1. The Court agrees with Thill that his medical records create a triable issue of fact, at least with respect to some claims, as to whether he was a "qualified individual with a disability" under the ADA.

The State of Minnesota and Judge Mayeron are correct that a temporary condition such as the need to recover from shoulder surgery does not qualify as a "disability" under the ADA. *See, e.g.*, *Gutridge v. Clure*, 153 F.3d 898, 901-02 (8th Cir. 1998). But the medical records that Thill submitted relate not just to his shoulder surgery, but also to his general health. And multiple medical records state that, in addition to an injured shoulder, Thill has both rheumatoid arthritis and Ehlers-Danlos syndrome.

Although the Court cannot take judicial notice of the impact of these two conditions on Thill, the Court can — and does — take judicial notice of the fact that these two conditions can be disabling.[3] The National Library of Medicine describes Ehlers-Danlos syndrome as follows:

> Ehlers-Danlos syndrome (EDS) is a group of inherited disorders that weaken connective tissues. Connective tissues are proteins that support skin, bones, blood vessels and other organs.
>
> EDS usually affects your skin, joints and blood vessel walls. Symptoms include

---

[3]The general symptoms of Ehlers-Danlos syndrome and rheumatoid arthritis are facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

>        * Loose joints
>        * Fragile, small blood vessels
>        * Abnormal scar formation and wound healing
>        * Soft, velvety, stretchy skin that bruises easily
>
> There are several types of EDS. *They can range from mild to life-threatening.* About 1 in 5,000 people has EDS. There is no cure. Treatment involves managing symptoms. It also includes learning how to protect your joints and prevent injuries.

U.S. Nat'l Library of Medicine & NIH, MedlinePlus, "Ehlers-Danlos Syndrome," http://www.nlm.nih.gov/medlineplus/ehlersdanlossyndrome.html (last visited Aug. 16, 2010) (emphasis added). Rheumatoid arthritis similarly varies in severity, but it can significantly limit mobility.[4]

To the extent that Thill's ADA claims are based on his recovery from shoulder surgery alone, Judge Mayeron was correct in finding that those claims must be dismissed. But at least some of his claims seem to be based on his medical condition generally, not on his shoulder injury specifically. With respect to those more general claims, the Court cannot find as a matter of law that Thill is not a "qualified individual with a disability" under the ADA, in light of Thill's medical records, Olmsted County's concession that Thill is disabled, and Thill's assertion that he receives Social Security disability benefits.[5]

---

[4]*See generally* U.S. Nat'l Library of Medicine & NIH, MedlinePlus — Encyclopedia, "Rheumatoid arthritis," http://www.nlm.nih.gov/medlineplus/ency/article/000431.htm (last visited Aug. 16, 2010).

[5]Because defendants do not dispute Thill's assertion that he receives Social Security disability benefits, the Court assumes that he does. Of course, "the definitions of disability under the Social Security Act and the ADA are not synonymous . . . ." *Swanks v. Wash. Metro. Area Transit Auth.*, 116 F.3d 582, 586 (D.C. Cir. 1997). But a person's receipt of Social Security disability benefits is some evidence that he is disabled under the ADA. *See Robinson v. Neodata Servs., Inc.*, 94 F.3d 499, 502 n.2 (8th Cir. 1996) (noting that Social Security disability determinations are "[a]t best . . . evidence for the trial court to consider in making its own

### 3. Entrance Doors

The event at the center of this litigation happened on October 19, 2007, when a door struck Thill as he was leaving the Olmsted County Government Center. Thill appears to contend that this door was not handicapped accessible and that there were no signs directing him to a door that was handicapped accessible. Am. Compl. ¶¶ 13, 20-22; Thill Dep. at 29-36, 54-56. For the sake of this argument, the Court understands Thill to be asserting that he needs to use handicapped-accessible entrances because of his permanent conditions (Ehlers-Danlos syndrome and rheumatoid arthritis) and not because of his temporary shoulder impairment.

Olmsted County responds to Thill's contentions about the entrance doors with an affidavit from Helen Monsees, the county's facilities coordinator. Monsees admits that the Government Center lacks signs directing visitors to handicapped-accessible entrances, but explains that such signs are unnecessary because *every* entrance to the Government Center is handicapped accessible. Monsees Aff. ¶ 3 [Docket No. 42]. Monsees further asserts that some entrances have "automatic push pads identified by the universal symbol of accessibility on or near the door itself," *id.* ¶ 4, and that all of the entrance doors are maintained regularly and according to ADA standards, *id.* ¶¶ 5-6.

Apart from providing evidence that a door hit him in the shoulder on October 19, 2007, Thill has offered basically no evidence that the entrances to the Olmsted County Government Center are inaccessible. Thill did attach various photos of building entrances to an affidavit he submitted in opposition to summary judgment. Thill Aff. Exs. 3, 5. But Thill acknowledges that the photos depict the "building complex" that houses the Olmsted County Government Center,

---

independent determination" about disability under the ADA).

rather than the Government Center itself, Thill Aff. ¶ 6, and some of the photos depict entrances labeled "City Hall" and "Law Enforcement Center," not "Government Center."

Two of the photos that Thill submitted do, however, seem to depict one of the entrances to the Government Center (one photo is from a wide angle; the other photo is a close-up of the upper region of the doors and the surrounding part of the building). These two photos show that steps lead up to the entrance door, that there are handicapped-parking spots in front of the entrance, and that there is no signage at the door indicating the location of a handicapped entrance. It is impossible to tell from the photos whether a ramp leads to the door, and Thill has not explained how or whether these photos demonstrate that the depicted entrance doors are not handicapped-accessible. Standing by themselves, these photos do not cast doubt on Monsees's assertion that all of the Government Center's entrances are handicapped-accessible. In ruling on defendants' summary-judgment motions, this Court is limited to the evidence in the record, and based on that evidence — even when taken in the light most favorable to Thill — a reasonable jury could not conclude that the Government Center's doors are inaccessible or lack signage required by the ADA.

The Court believes that the analysis above disposes of Thill's entrance-door-related claims. But for the sake of the completeness, the Court addresses two other entrance-door-related arguments that Thill could conceivably be making.

First, Thill might be arguing that (1) a particular entrance included both handicapped-accessible and non-handicapped-accessible doors, (2) he used the non-handicapped-accessible door on October 19, 2007, and (3) the door injured him because it did not comply with a standard

that applies to non-handicapped-accessible doors and that is enforceable under the ADA.[6] Even if the Court assumes that the first two points are true — that is, that Thill was injured by a non-handicapped-accessible door at an entrance that also included a handicapped-accessible door — Thill has provided no legal basis to support the third point — that is, that there are standards for non-handicapped-accessible doors that are enforceable under the ADA. *Cf.* ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") § 4.13.1 ("Doors *required to be accessible* by [ADAAG §] 4.1 shall comply with the requirements of [ADAAG §] 4.13.") (1991, as amended through 2002) (emphasis added), *available at* http://www.access-board.gov/adaag/html/adaag.htm. Defendants are therefore entitled to summary judgment on Thill's novel claim (if he is even making such a claim) that the ADA imposes requirements on non-handicapped-accessible doors even when a facility otherwise complies with the ADA's requirements for accessible entrances.

Second, Thill might be asserting that he used a handicapped-accessible door which, because it malfunctioned, was not in fact handicapped-accessible on the day that he used it. But even if this were true, Thill could not prevail on an ADA claim based on the door's malfunction.

The ADA does not require covered entities to do the impossible. In particular, it does not punish covered entities for occasional and inevitable breakdowns in handicapped-accessible features such as door openers, lifts, and elevators, as long as the covered entity remedies the

---

[6]Judge Mayeron appears to have construed Thill's amended complaint as raising such a claim. R&R at 13 ("Thill submitted that even entrances that are not handicapped accessible are required to be maintained so that the thrust needed to open and close the door meets ADA requirements.").

breakdowns promptly. Section II-3.10000 of the Department of Justice's Technical Assistance Manual for Title II, titled "Maintenance of accessible features," provides:

> Public entities must maintain in working order equipment and features of facilities that are required to provide ready access to individuals with disabilities. Isolated or temporary interruptions in access due to maintenance and repair of accessible features are not prohibited. . . .
>
> Mechanical failures in equipment such as elevators or automatic doors will occur from time to time. The obligation to ensure that facilities are readily accessible to and usable by individuals with disabilities would be violated, if repairs are not made promptly or if improper or inadequate maintenance causes repeated and persistent failures.

TA Manual § II-3.10000.

According to Monsees, Olmsted County regularly maintains all of its entrance doors in accordance with ADA standards. Monsees Aff. ¶¶ 5-6. Further, Monsees asserts that on August 16, 2007 — roughly two months before Thill's accident — routine maintenance was performed on the door, and that the door was tested, and found to be operating properly, soon after Olmsted County learned from Thill about the accident. *Id.* ¶¶ 7-9. On this record, even if the door was not in compliance with the ADA when Thill was injured, given Olmsted County's maintenance practices and its prompt response to Thill's complaint about the door, a reasonable jury could not find defendants liable under the ADA for the door's mechanical failure on October 19, 2007.

### 4. Unisex Bathroom

Thill contends in his amended complaint that he needed a unisex bathroom when visiting the Government Center because he needed assistance from a female caregiver. Am. Compl. at

¶ 24. According to Thill, the ADA requires "a certain percentage" of unisex bathrooms in public facilities, and the Government Center has no unisex bathrooms. *Id.* at 4.

As Judge Mayeron pointed out in the R&R, Thill provided no legal support for his contention that the ADA requires unisex bathrooms. R&R at 12. Thill did not provide any such support in his objection, and the Court has not located any ADA regulations that require unisex bathrooms in public facilities. To the contrary: The Department of Justice's Technical Assistance Manual for Title II summarizes the ADA's requirements with respect to bathrooms in new facilities, as embodied in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") and the Uniform Federal Accessibility Standards ("UFAS"), as follows:

> ADAAG: Every public and common use bathroom must be accessible. Generally only one stall must be accessible (standard five-by-five feet). When there are six or more stalls, there must be one accessible stall and one stall that is three feet wide (§§4.1.3(11); 4.22.4).
>
> UFAS: Same general requirements but no requirement for an additional three-foot-wide stall (§§4.1.2(10); 4.22.4).

TA Manual § II-6.3200(12). Because the ADA's physical-accessibility requirements do not call for unisex bathrooms, defendants are entitled to summary judgment on Thill's unisex-bathroom-based claim.

Further, defendants are entitled to summary judgment on this claim because it is based solely on Thill's recovery from shoulder surgery, a temporary condition, and not on his permanently disabling conditions (Ehlers-Danlos syndrome and rheumatoid arthritis). *See* Thill Dep. at 74-76 (discussing the unisex-bathroom claim), 75:1-9 (Thill agreeing that he has only ever needed a unisex bathroom after shoulder surgery).

5. Parking Lot

Thill contends in his amended complaint that the Government Center's parking lot fails to comply with the ADA in two ways: (1) too many of the parking spaces are too far from the building's entrances, and (2) the parking lot (or the building's exterior) does not include benches that are required under the ADA. Am. Compl. at 5.

Judge Mayeron noted in the R&R that Thill abandoned any claim about the number of parking spaces, and Thill does not dispute this conclusion in his objection. R&R at 2 n.1; Obj. at 1-2. With respect to Thill's claim about a need for benches, Judge Mayeron recommended dismissing the claim because she could not find, and Thill did not provide, any legal authority to support Thill's argument that such benches are required under the ADA. R&R at 14-15. Thill did not dispute this aspect of the R&R in his objection, and he did not provide the legal authority whose absence Judge Mayeron pointed out. Obj. at 1-2. Accordingly, defendants are entitled to summary judgment on Thill's ADA claims as they relate to the Government Center's parking lot.

C. *State-Law Claim*

The section of Thill's amended complaint titled "Causes of Action" contains two subheadings in bold type, one that reads "Violations of Title II of the ADA Are as Follows," and a second that reads "Personal Injury." Am. Compl. at 4-5. Defendants each construed Thill's amended complaint as raising a state-law tort claim. Olmsted County SJ Mem. at 7-11; Minn. SJ Mem. at 4. The Court agrees with defendants that Thill's amended complaint asserts a negligence claim under state law and thus disagrees with Judge Mayeron's contrary conclusion. *See* R&R at 16.

The Court agrees with Judge Mayeron, however, that the Court should decline to exercise supplemental jurisdiction over Thill's state-law claim. *See* R&R at 17-18. Given that all of Thill's federal claims are being dismissed, a Minnesota state court would be a better forum for his state-law claim, which is dismissed without prejudice. *See* 28 U.S.C. § 1367(c) (permitting a federal court to decline to exercise supplemental jurisdiction over state-law claims when all federal claims have been dismissed); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 756 (8th Cir. 2010) (quoting *Carnegie-Mellon*). The Court expresses no opinion on the merits of Thill's state-law claim.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, the Court OVERRULES Thill's objection [Docket No. 64] and ADOPTS IN PART Judge Mayeron's Report and Recommendation [Docket No. 63] to the extent that it is consistent with this Memorandum Opinion and Order. Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant Olmsted County's Motion for Summary Judgment [Docket No. 38] is GRANTED IN PART as follows:

    a. Plaintiff David Thill's claims against Olmsted County under the Americans with Disabilities Act are DISMISSED WITH PREJUDICE AND ON THE MERITS.

      b.      Olmsted County's motion is DENIED in all other respects.

2.      Defendant the State of Minnesota's Motion for Summary Judgment [Docket No. 28] is GRANTED IN PART as follows:

      a.      Plaintiff David Thill's claims against the State of Minnesota under the Americans with Disabilities Act are DISMISSED WITH PREJUDICE AND ON THE MERITS.

      b.      The State of Minnesota's motion is DENIED in all other respects.

3.      Plaintiff's state-law claim is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 24, 2010                                        s/Patrick J. Schiltz
                                                                                Patrick J. Schiltz
                                                                                United States District Judge